IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2018 OCT 17 PM 5:25

OFFICE OF THE CLERK

| UNITED STATES OF AMERICA, | 4:18CR3143 |
|---|---|
| Plaintiff, | |
| vs. | INDICTMENT<br>18 U.S.C. § 1341 |
| FREDERICK ALAN VOIGHT, | 18 U.S.C. § 1343<br>18 U.S.C. § 1957 and |
| Defendant. | 18 U.S.C. § 2 |

The Grand Jury charges:

## INTRODUCTION

1. During the time period of 2004 to July 31, 2015, in the district of Nebraska and elsewhere, the defendant FREDERICK ALAN VOIGHT, hereinafter VOIGHT, conducted business in his own name, located in Texas, and through various business entities, including but not limited to:

F.A. Voight & Associates, LP (FAVA), and Voight Financial Services, Inc. (Voight Financial);

Daystar Funding, LP (Daystar), and Lenape Holdings, LLC (Lenape);

Voight Solar Ventures, LP (Voight Solar);

APV Management, LLC (APV);

Topside Partners, LP (Topside), and Trademont Associates, LLC (Trademont);

Rhine Partners, LP (Rhine), and Richson Investments, LLC (Richson);

Fandeck Associates, Inc. (Fandeck), and Rivercoach Partners, LP (Rivercoach);

Sussex Associates, LP (Sussex), and Silverton Investments, LLC (Silverton);

New Horizon, Inc. (New Horizon).

2. VOIGHT represented to investors that he would search the business community throughout the world for companies that had an "excellent and innovative product in a growing

market" but were short of cash needed to take their product to market. VOIGHT represented that his business entities pooled investor funds and provided the needed financing to companies to take them through "commercialization and to profitability." In order to further induce investors, VOIGHT represented to investors that the companies he picked for investments had a "social aspect" to them, meaning that the investment was for a company that was "helping to change people's lives for the good." VOIGHT would refer to these investment opportunities in companies he solicited investments for as "Programs" and would specify to the investor the company being provided money by VOIGHT. VOIGHT represented that his business entities would pay investors a specified interest rate that varied depending on the company to be invested in, and that their investment was protected against loss by his personal guarantee, by the assets held in the companies, and by the assets of his business entities. Investors and VOIGHT signed promissory notes which specified the amount of investor money loaned to VOIGHT, the length of the loan, the interest rate to be paid by VOIGHT, the security, and the "Program"/company to whom VOIGHT, in turn, would loan the investors' money. The statements made by VOIGHT were material to the decision of the investors to invest in the "Program" offered by VOIGHT. During the time period material to this Indictment, a substantial number of individuals throughout the United States, including several persons residing in the District of Nebraska, invested in "Programs" offered by Voight. Prior to moving to Texas, VOIGHT resided in Lincoln, Nebraska.

3. The companies identified by VOIGHT to whom investor money was to be loaned for the "Programs," included, but were not limited to, the following:

Energy Photovoltaics, Inc. (EPV);
Deschutes Medical Products (DMP);
KMX Corporation (KMX);
Nanergy Inc.;
Cell Robotics;
All Green Capital (AGC);
Helm Capital Group, Inc. (HELM);
PowerCold;
Legends & Heroes, Inc., a/k/a Skineez and CCI;

2

RevH2O, LLC (RevH2O);

Innovative Energy, Inc. (IEI) / Innovative Energy Partners (IEP);

JSV;

Sonostics, Inc.;

Titan Atlas Global;

Tristar Wellness Solutions, Inc. (Tristar), and Hemcon Medical Technologies, Inc. (Hemcon); and

InterCore, Inc., a/k/a SRG, ADS, DADS, InterCore Energy, Inc., Heartland Bridge Capital, Inc., and I-Web Media, Inc.

4. During the time period material to this Indictment, investors sent their money to VOIGHT, typically, either by a written check mailed to VOIGHT, or by a wire transfer of funds.

## Scheme to Defraud

5. Beginning at least as early as September 2009, and continuing to on or about the end of July, 2015, in the District of Nebraska and elsewhere, VOIGHT devised and intended to devise a scheme and artifice to defraud the investors who placed money with him, by and through the business entities referenced in Paragraph One, and to obtain money from said investors by means of material false and fraudulent pretenses and representations, and promises.

6. It was a part of the scheme and artifice that VOIGHT made material false and fraudulent representations and promises to investors and potential investors to induce them to loan their monies to VOIGHT, through business entities owned and/or affiliated with VOIGHT. These false and fraudulent representations included soliciting loans from victim investors by telling them their money would be loaned to specifically identified companies, through investment "Programs" offered to investors, well knowing he was not going to loan the victim's money to the specifically identified companies. By making these false representations, investors were deprived of this materially valuable information in deciding how to use their assets and monies. Between on or about September 2009 and on or about July 31, 2015, VOIGHT obtained approximately $76,225,173 from approximately 608 investors pursuant to a promise to loan the money to various specifically-identified companies, but only approximately $22,006,699 was in fact loaned by VOIGHT to some of these companies.

3

7. It was further part of the scheme and artifice that VOIGHT promised to pay interest on the money loaned to him by the investors. In furtherance of the scheme and artifice to defraud, he paid monthly interest payments to the victim investors, lulling them with a false sense of confidence in the loans they thought they were making. These monthly interest payments were paid to the investors via wire transfers of funds from a VOIGHT bank account to the victim investors' bank accounts, or by mailed checks. The interest payments offered to investors ranged from twelve percent (12%) to forty-two percent (42%) per annum. Some investors chose an option not to receive their interest payments, but instead to have it rolled into principal. The victim investors, believing their initial loans were performing as promised, and that VOIGHT was trustworthy, often agreed to and did loan additional sums of money to VOIGHT.

8. It was further a part of the scheme and artifice that to continue the scheme, interest payments and principal repayments, made by VOIGHT to investors, generally did not come from the companies identified by him as the intended recipient of the victims' monies. Instead, the money for these payments was generally derived from the funds of new investors. Investors did not know that VOIGHT was making interest payments to old investors with funds acquired through investments made from new investors into VOIGHT's "Programs." VOIGHT defrauded investors by failing to provide them with information about the source of their interest payments, thereby depriving investors of materially valuable information investors needed in deciding how to use their assets and monies.

9. It was further a part of the scheme and artifice to defraud that VOIGHT advised victim investors their loans were safe, secured, and guaranteed. VOIGHT advised victim investors his investment programs were secured interest-bearing loans, similar in nature to bonds because they provided regular income.

10. It was further part of the scheme and artifice to defraud that VOIGHT made additional false and fraudulent representations and promises to investors about how the investor's money would be invested. For several "Programs," VOIGHT solicited investments representing that the money would be used to fund a particular specified company. In truth and fact, as VOIGHT then and there well knew, he provided none of the investor's money to the company referenced by VOIGHT. As a further part of the scheme, although VOIGHT provided

4

no funds to these companies during the scheme, VOIGHT provided updates on these companies to victim investors in order to lull them into believing that the investor's money was being used as represented by VOIGHT. VOIGHT made principal and interest payments to victim investors under the names of these companies despite providing no funds to the companies. VOIGHT falsely and fraudulently represented to investors that the money was being used in the manner described in solicitations by VOIGHT, when in truth and fact, as VOIGHT well knew, VOIGHT provided no funds to and received no funds from the companies in question. Through these false statements, representations and promises, VOIGHT deprived investors of materially valuable information investors needed in deciding how to use their assets and monies.

11. It was further part of the scheme and artifice to defraud that VOIGHT falsely and fraudulently represented to victim investors that when an investment "Program" closed, the victim investor could rollover the principal balance of the investment from one "Program" to a different "Program." In truth and fact, as VOIGHT then and there well knew, VOIGHT failed to receive funds from the specific program company from which the funds were allegedly being transferred from, and failed to provide any rollover balances to the next program company.

12. It was further part of the scheme and artifice to defraud that VOIGHT falsely and fraudulently represented to victim investors the amount of funds VOIGHT would provide to the companies.

13. During the course of the scheme and artifice to defraud, investors of VOIGHT and his related business entities lost approximately $40,903,052.

## COUNTS I – XVI
### (Mail Fraud)

14. Paragraphs 1 through 13 of this Indictment are re-alleged and incorporated as if fully set forth herein.

15. On or about the dates set forth below, in the District of Nebraska and elsewhere, the Defendant, FREDERICK ALAN VOIGHT, having devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent

pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice described above, did knowingly cause to be placed in an authorized depository for mail, to be sent and delivered by the Postal Service, or knowingly caused to be deposited any matter to be delivered by any private or commercial interstate carrier, according to the direction thereon, the following matters:

| Count | Approximate Date | Description of Mailing |
|---|---|---|
| 1 | 11/5/12 | Two checks from TB and SB in the amounts of $5,000 and $10,000, payable to FAVA, for the "CCI program", mailed from Waterloo, NE to Richmond, TX. |
| 2 | 8/17/12 | A check from RH and LH in the amount of $25,000, payable to FAVA, for the "CCI program", mailed from Holdrege, NE to Richmond, TX. |
| 3 | 11/6/12 | A check from RH and LH in the amount of $25,000, payable to FA Voight, for the "CCI program", mailed from Holdrege, NE to Richmond, TX. |
| 4 | 10/21/13 | A check from RH & A in the amount of $20,000, payable to FAVA, for the "CCI program", mailed from Holdrege, NE to Richmond, TX. |
| 5 | 3/28/14 | A check from RH and LH in the amount of $20,000 and a check from RH & A in the amount of $20,000, both payable to FAVA and both for the "CCI program", and both mailed from Holdrege, NE to Richmond, TX. |
| 6 | 6/25/12 | A check from TB and SB in the amount of $10,000, payable to FAVA, for the "RevH2O program", mailed from Waterloo, NE to Richmond, TX. |
| 7 | 8/22/12 | Two checks from TB and SB in the amounts of $11,000 and $4,000, both payable to FAVA, both for the "RevH2O program", mailed from Waterloo, NE to Richmond, TX. |
| 8 | 1/11/13 | A check from BB in the amount of $15,000 payable to FAVA, for the "RevH2O program", mailed from Sutton, NE to Richmond, TX. |
| 9 | 9/14/12 | A check from AD and PD in the amount of $30,000, payable to F.A. Voight, for the "RevH2O program", mailed from Plattsmouth, NE to Richmond, TX. |
| 10 | 10/31/12 | A check from AD and PD in the amount of $30,000, payable to F.A. Voight, for the "RevH2O program", mailed from Plattsmouth, NE to Richmond, TX. |

| 11 | 2/1/13 | A check from JA in the amount of $10,000, payable to FAVA, for the "RevH2O program", mailed from Omaha, NE to Richmond, TX. |
| 12 | 2/4/13 | A check from RH and LH in the amount of $45,000, payable to FAVA, for the "RevH2O program", mailed from Holdrege, NE to Richmond, TX. |
| 13 | 2/19/13 | A check from FP and RP in the amount of $274,995 payable to FAVA, two checks payable to RP, both in the amount of $240,000 and both endorsed over to FAVA, and a check made payable to FP in the amount of $245,005 and endorsed over to FAVA, said checks to be split between the "RevH2O ($700,000) and Sonostics ($300,000) programs", all mailed from Omaha, NE to Richmond, TX. |
| 14 | 5/21/14 | A check from TB and SB in the amount of $35,000 payable to Daystar, for the "ADS program", mailed from Waterloo, NE to Richmond, TX. |
| 15 | 2/25/15 | A check from DR and BR in the amount of $30,000 payable to Daystar, for the "DADS program", mailed from Hampton, NE to Richmond, TX. |
| 16 | 5/3/15 | A check from DR and BR in the amount of $20,000 payable to Daystar, for the "HEMCON program", mailed from Hampton, NE to Richmond, TX. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS XVII – XVIII

16. Paragraphs 1 through 13 of this Indictment are re-alleged and incorporated as if fully set forth herein.

17. On or about the dates set forth below, in the District of Nebraska and elsewhere, defendant, FREDERICK ALAN VOIGHT, having devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce, by a wire communication, certain writings, signs, signals, and pictures, as follows:

| Count | Approximate Date | Description of Interstate Wire Transmission |
|---|---|---|
| 17 | 5/31/13 | $785,000 transferred from the bank account of RP in Omaha, NE to the bank account of FAVA in Richmond, TX, to be split between the "RevH2O ($385,000) and Intercore ($400,000) programs". |
| 18 | 4/27/15 | $25,000 transferred from the bank account of FRL in Omaha, NE to the bank account of Daystar in Richmond, TX, for the "HEMCON program". |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS XIX – XXII

18. Paragraphs 1 through 13 of this Indictment are re-alleged and incorporated as if fully set forth herein.

19. On or about the dates set forth below, in the District of Nebraska, and elsewhere, the defendant, FREDERICK ALAN VOIGHT, did knowingly engage and attempt to engage in the following monetary transactions by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, and transfer, of U.S. currency, funds, and monetary instruments, to wit, wire transfers as set forth below, such property having been derived from a specified unlawful activity, that is, a violation of Title 18, United States Code, Sections 1341, mail fraud.

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 19 | February 22, 2013 | Wire Transfer from Wells Fargo Bank, account number ending in 0783, in the name of F.A.Voight & Associates, LP to JP Morgan Chase Bank, account number ending in 4833, in the name of F.A.Voight & Associates, LP, in the amount of $1,000,000. |
| 20 | February 28, 2013 | Wire Transfer from JP Morgan Chase Bank, account number ending in 4833, in the name of F.A.Voight & Associates, LP, to JP Morgan Chase Bank, account number ending in 2921, in the name of Frederick Voight and J.V., a name known to the Grand Jury, in the amount of $10,825. |

8

All in violation of Title 18, United States Code, Sections 1957 and 2.

A TRUE BILL.

FOREPERSON

The United States of America requests that trial of this case be held in Lincoln, Nebraska, pursuant to the rules of this Court.

STEVEN A. RUSSELL,
Assistant U.S. Attorney