IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>FREDERICK ALAN VOIGHT,<br><br>　　　　Defendant. | 4:18CR3143<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

This case is before the court on the Motion to Dismiss the Superseding Indictment filed by Defendant Frederick Alan Voight (hereafter "Voight"), (Filing No. 111).

## BACKGROUND

The government has charged Voight with Mail Fraud (18 U.S.C.A. § 1341); Wire Fraud (18 U.S.C.A. § 1343); and Money Laundering (18 U.S.C.A. § 1957). See (Filing No. 91) (Superseding Indictment).

The government argues that the Superseding Indictment lays out a "scheme devised by Voight to defraud investors/noteholders and to obtain money from the investors/noteholders by means of materially false and fraudulent pretenses and representations and promises." (Filing No. 118 at CM/ECF p. 2) (citing Filing No. 91 at CM/ECF p. 3, ¶ 5).  Allegedly, Voight solicited "investors"[1] to contribute funds to specified companies but in truth failed to use investors' monies to fund the

---

[1] Voight takes issue with the government's use of the term "investors" and claims that the participants should be defined as "lenders." The court will use the government's terminology in this findings and recommendation. On a motion to dismiss a criminal indictment, the court must accept as true the allegations of the operative charging document. United States v. Hansmeier, 988 F.3d 428, 436 (8th Cir. 2021).

companies he specified. (Filing No. 118 at CM/ECF p. 2) (citing Filing No. 91 at CM/ECF p. 5, ¶ 10). The government further posits that Voight provided "updates to the investors to lull them into believing that the investor's [sic] money was being used as represented by Voight" when Voight "well knew" that the funds were not being used as he claimed. (Filing No. 118 at CM/ECF p. 2) (citing Filing No. 91 at CM/ECF p. 5, ¶ 10). The Superseding Indictment alleges that Voight was using money from new investors to make interest payments to old investors to conceal his allegedly illicit scheme. (Filing No. 118 at CM/ECF p. 7).

In addition, the government asserts that Voight devised a fraudulent "Note Exchange Offer," ("NEO"). The government argues that

> Voight provided information in the NEO that falsely stated that he and his companies had invested or loaned the bulk of the funds to a number of companies, and that commercial borrowers had failed to repay their loans or lost a great deal of their enterprise value and in certain cases sought bankruptcy protection due to the lack of ability to provide the initial capital to these entities. In fact, as Voight knew, less than 30% of the total funds he received were actually sent to companies as represented.

(Filing No. 118 at CM/ECF p. 3). The government alleges that Voight concealed his ownership interest in certain companies involved in the NEO in order to materially impact noteholders/investors' decision to participate. (Filing No. 118 at CM/ECF pp. 3-4). The government claims that Voight's concealment of his interest in certain involved-companies was for the purpose of "lull[ing] investors into believing that the note exchange agreement was not controlled by Voight, in order to give [it] legitimacy." (Filing No. 118 at CM/ECF p. 4).

The government claims that "[b]y making these representations Voight obtained approximately $76 million dollars from 608 investors but paid only $22

2

million dollars to the companies in question." (Filing No. 118 at CM/ECF p. 7). And "[d]uring the scheme and artifice to defraud alleged in the Superseding Indictment, investors of Voight and his related businesses, lost approximately $40 million dollars." (Filing No. 118 at CM/ECF p. 4).

During some of the period during which the government alleges that Voight was involved in the foregoing fraudulent activity, he was also engaged in a dispute with both the Internal Revenue Service ("IRS") and the Securities and Exchange Commission ("SEC"). Following several IRS audits (and subsequent Tax Court proceedings) and an SEC investigation (and subsequent civil case in a Texas district court), Voight entered into certain stipulated agreements with the IRS and SEC to resolve the disputes. The United States Tax Court approved and adopted the agreements between Voight and the IRS. See (Filing Nos. 120-1; 120-2; and 120-3). And the United States District Court for the Southern District of Texas entered an agreed-to judgment (with Voight's written consent) resolving the dispute with the SEC. (Filing Nos. 120-4; 120-5).

Voight was indicted in this district on October 17, 2018, with a superseding indictment filed September 24, 2020. (Filing No. 1; Filing No. 91). The Superseding Indictment is the currently operative charging document. Voight timely filed this motion to dismiss all counts of the Superseding Indictment on April 12, 2021, and it was fully submitted on May 27, 2021. (Filing No. 111).

ANALYSIS

Voight makes four arguments in support of dismissal: (1) that the Superseding Indictment fails to sufficiently allege a criminal offense; (2) that "outrageous government conduct" warrants dismissal; (3) that the doctrines of res

judicata and collateral estoppel should apply to bar Voight's criminal prosecution; and (4) that Count VI is barred by the statute of limitations.

Voight's motion (Filing No. 111) should be granted in part and denied in part. The government concedes that Count VI is beyond the statute of limitations and should be dismissed. The undersigned therefore recommends that Voight's motion to dismiss Count VI be granted. In all other respects, the motion should be denied.

I.  Failure to Sufficiently Allege a Crime

Voight first argues that the Superseding Indictment fails to state an offense and is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(3)(B)(v).[2]

When determining whether an indictment states a legally sufficient basis for criminal liability, the court will "accept the allegations stated in the indictment as true…and ask whether they can form the basis of the charged offense." United States v. Hansmeier, 988 F.3d 428, 436 (8th Cir. 2021). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Steffen, 687 F.3d 1104, 1109 (8th Cir. 2012) (quoting United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir.1993)). "An indictment will ordinarily be held sufficient unless it is so

---

[2] Voight's motion purports to asks for dismissal of all counts of the Superseding Indictment based on a failure, as a matter of law, to sufficiently allege any crime. However, Voight only addresses the mail and wire fraud allegations in his briefing, making no mention of the money laundering charges asserted in Counts XIX – XXII pursuant 18 U.S.C.A. § 1957. "A party's failure to brief an issue raised in a motion may be considered a waiver of that issue." NECrimR 12.3(b)(1). That notwithstanding, the court has reviewed the money laundering allegations and finds that they are facially sufficient. However, given the lack of specific argument by Voight for the court to address, the court devotes no further discussion to the matter.

4

defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009) (quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008))).

Voight argues that that the mail and wire fraud charges in the Superseding Indictment are insufficient because they fail to allege that Voight intended to defraud the investors/noteholders who participated in his programs. He argues that "[a]n intent to deceive is not an intent to defraud." (Filing No. 112 at CM/ECF p. 7). And that "18 U.S.C. 1341 does not punish mere deceit of another person or entity unless there is a contemporaneous purpose…to injure the alleged victim." (Filing No. 112 at CM/ECF p. 7).

The court is unpersuaded. That Voight intended only to "deceive" but not to "defraud" is an interesting framing of the issue but is essentially meaningless. To prove a fraudulent scheme in support of a wire or mail fraud allegation, the government must establish: "(1) there was a deliberate plan of action or course of conduct to hide or misrepresent information; (2) the hidden or misrepresented information was material; and (3) the purpose was to get someone else to act on it." Hansmeier, 988 F.3d at 436 (quoting United States v. Luna, 968 F.3d 922, 926 (8th Cir. 2020). "Deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter" can constitute a fraudulent scheme. Steffen, 687 F.3d at 1109.   Whether labelled as deceit or not, the conduct described in the Superseding Indictment is sufficient to meet that standard.

The Superseding Indictment alleges Voight deliberately misrepresented his relationship to the business entities involved in the purported scheme and deliberately mispresented where funds provided by the investors/noteholders

5

would be directed. (Filing No. 118 at CM/ECF p. 2) (citing Filing No. 91 at CM/ECF pp. 3, 5 ¶¶ 5, 10). It further alleges that the foregoing materially affected investors/noteholders decision to participate in the transactions. (Filing No. 91 at CM/ECF p. 2, ¶ 2).

Crimes alleging a fraudulent scheme require a "slightly" greater level of pleaded detail in the indictment. Hansmeier, 988 F.3d at 436. Put differently, an indictment for the types of financial crimes alleged against Voight must "specify facts ... with such reasonable particularity as will apprise the defendant, with reasonable certainty, of the nature of the accusation." Id. Read in their entireties, and even on that heightened standard, the allegations contained in the Superseding Indictment are sufficient to allege a fraudulent scheme in support of both mail and wire fraud charges.

Voight claims that the court should consider his alternative explanation for his actions and find the indictment insufficient due to his lack of actual intent to defraud. He argues that this financial scheme was not "designed to fail" and that as a result, he had no intent to injure any of the purported victims. (Filing No. 112 at CM/ECF p. 7). But, his explanation of his conduct is not relevant at this stage – it is the government's allegations that the court must evaluate. Hansmeier, 988 F.3d at 438. At trial, Voight is free to "dispute the facts, offer alternative explanations for his conduct, or provide context to any of the actions alleged." Id. But Voight's "possible defenses are not relevant to [the court's] consideration of whether the indictment itself properly stated the basis for the charged offenses." Id.

Because the facts in the Superseding Indictment, accepted as true, describe a fraudulent scheme prohibited by federal law, Voight cannot succeed in his claim that the mail and wire fraud charges are facially insufficient. His motion to dismiss on this basis should be denied.

II.   Outrageous Government Conduct

Voight next argues that the government's "outrageous" conduct warrants dismissal of the charges against him.

"The claim of outrageous government conduct rests on the Due Process Clause of the Fifth Amendment." United States v. Searcy, 233 F.3d 1096, 1101 n. 3 (8th Cir.2000). The Fifth Amendment of the United States Constitution protects defendants from deprivation of life, liberty and property "without due process of law...." U.S. Const. amend. V. The level of malfeasance necessary to establish a Due Process violation is "quite high." United States v. Pardue, 983 F.2d 835, 847 (8th Cir. 1993). "Outrageous government conduct requires dismissal of a charge 'only if it falls within the narrow band of the most intolerable government conduct.'" United States v. Bugh, 701 F.3d 888, 894 (8th Cir.2012) (quoting United States v. Morse, 613 F.3d 787, 792–93 (8th Cir.2010)). The level of outrageousness must be of such a nature as to "shock the conscience of the court." United States v. Williams, 720 F.3d 674, 686 (8th Cir. 2013) (citing United States v. King, 351 F.3d 859, 867 (8th Cir.2003).

If the court finds that the government has engaged in conduct that "shocks the conscience," the court may dismiss criminal charges to avoid a Fifth Amendment due process violation. See United States v. Boone, 437 F.3d 829, 841 (8th Cir.2006); United States v. Russell, 411 U.S. 423, 431–32, (1973) (stating that a court may dismiss an indictment on due process grounds when "the conduct of

7

law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction").

Voight argues that the government's "conduct in pursuing Mr. Voight for decades is so outrageous that dismissal of the Superseding Indictment is warranted." (Filing No. 112 at CM/ECF p. 8). However, his explanation of that allegation is somewhat hard to follow. Voight complains that he was subject to years of IRS audits and a years-long SEC investigation prior to the criminal charges levied. In connection with the IRS investigation, Voight claims that the IRS utilized an individual named Earl Brown ("Brown") as a "hired gun" who relentlessly pursued him. (Filing No. 112 at CM/ECF p. 8). And in connection with the SEC investigation, he complains that the SEC froze his assets. He claims that even after the IRS and SEC engaged in the foregoing complained-of conduct, those civil proceedings ended in a determination that he had committed no financial wrongdoing.[3]  (Filing No. 112 at CM/ECF p. 8).

As best the court can tell, Voight's argument is that the IRS and SEC were improperly ruthless in their investigation, those investigations took too long, and the IRS/SEC tactics make a later prosecution by the United States Attorney outrageous.  The court disagrees. Voight offers no evidence, no argument, and no legal citation that would support that theory.

Perhaps Voight is arguing that there was an unconstitutional <u>delay</u> in bringing the charges. If so, that theory is without legal merit.

> [D]efendants claiming a due process violation for pre-indictment delay must carry the burden of proof on two separate elements. The

---

[3] That is an issue of much debate between the parties and is discussed in more detail in response to Voight's res judicata and collateral estoppel arguments below.

8

>defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him.

United States v. Jackson, 446 F.3d 847, 849-50 (8th Cir.2006) (citations and footnote omitted). "If Defendant is unable to establish actual prejudice, the court 'need not assess the government's rationale for the delay.'" United States v. Elmardoudi, 2007 WL 186526, at *4 (N.D. Iowa Jan. 22, 2007) (quoting United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir.2002)). Voight makes no allegation of any actual prejudice whatsoever.

If he is complaining specifically of the tactics utilized by the SEC and IRS regulators, he has provided the court with no basis to conclude that those tactics meet the legal standard required to demonstrate outrageous conduct. Cf. United States v. Combs, 827 F.3d 790, 795 (8th Cir. 2016) (finding no outrageous conduct where agents used "subterfuge" and an extremely elaborate sting operation during investigation); see also United States v. Shah, 768 F. App'x 637, 641 (9th Cir. 2019), cert. denied, 140 S. Ct. 933, 205 L. Ed. 2d 522 (2020) (finding no outrageous conduct when IRS told a taxpayer that he owes a substantial amount of back taxes, and then surreptitiously recording him to see if he offers a bribe to his IRS auditor).

Voight makes no allegation, and provides no other support for a finding, that the federal prosecutors who are assigned to this case colluded or otherwise conspired with either the IRS or the SEC or have otherwise engaged in any misconduct at all. Moreover, he provides no legal authority (and the court has located none) that would support the blanket assumption that filing criminal charges after a previous SEC and IRS investigation, even an SEC/IRS investigation that resulted in a favorable outcome for a defendant, constitutes an

9

abuse of power or outrageous conduct. That he was subjected to civil investigations prior to these criminal charges, even protracted investigations that Voight believes were ill-advised, does not constitute the type of shocking conduct arising to the level of a Fifth Amendment violation. The court finds that this case is not one of the "rare" instances that the court should dismiss an indictment based on the investigation/prosecution conduct involved. Combs, 827 F.3d at 794 (noting that in drafting the Combs opinion, the Eighth Circuit was only able to locate two reported federal appellate cases upholding a finding of "outrageous government conduct").

Voight's motion for dismissal based on outrageous conduct should be denied.

III.  Res judicata and Collateral Estoppel

Finally, Voight argues that the doctrines of res judicata and/or collateral estoppel should apply to bar his criminal prosecution in this case.

   A. Res judicata

"The doctrine of res judicata, also known as claim preclusion, is designed to promote judicial economy by preventing litigants from bringing repetitive lawsuits based on the same cause of action." United States v. Brekke, 97 F.3d 1043, 1047 (8th Cir. 1996) (citation omitted).

Res judicata is available only where the following three elements are established: "(1) [a] prior judgment was entered by a court of competent jurisdiction; (2) the decision was a final decision on the merits; and (3) the same

cause of action and the same parties or their privies were involved in both cases." Morse v. Comm'r, 419 F.3d 829, 833 (8th Cir. 2005).

Here, Voight argues that previous determinations by the United States Tax Court and the United States District Court for the Southern District of Texas have preclusive effect on this criminal case.

The government filed three Tax Court documents related to Voight's IRS investigation. (Filing No. 120-1; Filing No. 120-2 and Filing No. 120-3). The Tax Court filings proffered by the government were entered to reflect a stipulated settlement between Voight and the IRS. (Filing No. 120-1; Filing No. 120-2 and Filing No. 120-3). Put differently, the Tax Court did not, for any of the audited periods, resolve a contested issue between the parties.

But, contrary to the government's argument, a Tax Court order, even one only entered by consent of the parties, can bar a retrying of a claim raised and resolved by any such stipulated order. United States v. Int'l Bldg. Co., 345 U.S. 502, 506, 73 S. Ct. 807, 809, 97 L. Ed. 1182 (1953).

Voight argues that the United States Tax Court "decided" and ratified" the following:
1. That the promissory notes were legitimate lending transactions;
2. That Mr. Voight's transfers to the companies in the portfolio were legitimate loans and investments;
3. That the total assets exceeded the total promissory-note liability and, thus, Mr. Voight was always able to service and pay back the promissory notes;

11

4. That Mr. Voight had legitimate business justifications for using new borrowings to finance old promissory note debts, and was not running a Ponzi scheme;

5. That Mr. Voight did not divert funds to himself either directly or indirectly;

6. That Mr. Voight was entitled to manage the money borrowed through the promissory notes as he saw fit, regardless of the program note titles; And that Mr. Voight's business model was not fraudulent.

(Filing No. 112 at CM/ECF p. 5). Those broad proclamations, however, are impossible to reconcile with the evidence currently before the court. Voight himself filed no evidence and does not cite to or reference any specific document or court opinion when listing the foregoing "holdings" of the Tax Court. Those filings only address Voight's tax liability and do not reference, let alone explicitly decide, any of the above substantive points.

The Supreme Court addressed the impact of a stipulated Tax Court order in United States v. Int'l Bldg. Co. See 345 U.S. at 506. The Court found that the stipulated judgment of the Tax Court would preclude a retrial of the actual tax liability involved. However, the Court found that where the record is not clear as to why the parties consented to the relevant judgment, those points were not "decided" for the purpose of res judicata. The Court explained:

> [t]here is no showing either in the record or by extrinsic evidence, see Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214, that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties. Perhaps, as the Court of Appeals inferred, the parties did agree on the basis for depreciation. Perhaps the settlement was made for a different reason, for some exigency arising out of the bankruptcy proceeding. As the case reaches us, we

>are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration[.]

United States v. Int'l Bldg. Co., 345 U.S. at 506. The Supreme Court thus held that even where the parties may have addressed and agreed on the facts underlying a tax dispute, a secondary trial of their merits is not precluded by the doctrine of res judicata where the record does not clearly establish that the Tax Court's order (stipulated or otherwise) was premised on those findings Id; see also Brekke, 97 F.3d at 1049.

The same reasoning and outcome applies here. While Voight argues that the Tax Court proceedings resolved the merits related to the financial wrongdoing alleged in this case, that is not clear from the Tax Court record or evidence available to the court. Thus, there is no basis to bar Voight's prosecution in this case based on the previous Tax Court proceedings.

As to the SEC investigation and subsequent consent judgment of the federal district court in Texas, the same result is required. Based on a review of the Texas order, there was no determination of any of the claims raised in the Superseding Indictment. Perhaps Voight entered into the stipulated judgment in the SEC matter because he believed that the parties had an agreement as to the underlying facts of his conduct. But, upon review of the judgment (and related consent document executed by Voight), it does not reach the merits of that conduct.

Moreover, Voight expressly agreed in resolving the SEC matter that the resolution would not bar a subsequent criminal case based on the underlying facts. He agreed that

>no promise or representation has been made by the [SEC] or any member, officer, employee, agent, or representative of the [SEC] with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal

> liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding… [.]

(Filing No. 120-4). Voight's invocation of res judicata is therefore misplaced and does not warrant dismissal of the complaint.[4] United States v. Int'l Bldg. Co., 345 U.S. at 506; see also Brekke, 97 F.3d at 1049 ("Because many settlements involve a similar pattern, the general rule is that a consent judgment has no issue – preclusive affect unless it is clearly show that the parties intended to foreclose a particular issue to future litigation.")

### B. Collateral Estoppel

Voight's collateral estoppel argument fails too, for the same reasons as the res judicata theory addressed above.

> Collateral estoppel consists of five elements:
>
> (1) the party sought to be precluded in the second suit was a party ... in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was "actually litigated" in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was "essential to the judgment."

Morse v. Comm'r, 419 F.3d 829, 834 (8th Cir.2005). As discussed, the Tax Court and Southern District of Texas holdings did not actually adjudicate the issues

---

[4] In addition to the above, "a civil action may preclude a later criminal prosecution, but only if both actions are based on the same facts and both have punishment as their object." Brekke, 97 F.3d at 1047 (citing Dranow v. United States, 307 F.2d 545, 556 (8th Cir.1962))."Additions to tax, like those imposed for ... failure to file timely and to pay timely…are remedial, and not punitive." United States v. Auffenberg, 101 A.F.T.R.2d 2008-778 (D.V.I. Feb. 7, 2008) (collecting cases). Moreover, consent decrees imposing penalties under the Security and Exchange Act are "not punitive but rather devices to protect the investing public." United States v. Naftalin, 606 F.2d 809, 812 (8th Cir. 1979).Because neither the IRS nor SEC proceedings were for the purpose of "punishment," Voight's res judicata argument fails on this basis as well.

14

raised in the Superseding Indictment. Thus, whether couched as res judicata or collateral estoppel, there is no basis on either theory to preclude this criminal case.

## CONCLUSION

After thorough evaluation of the record and the argument of both parties, the undersigned finds that Voight has not stated any basis for dismissal of the Superseding Indictment, other than Count VI.

IT THEREFORE IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to dismiss filed by the defendant, (Filing No. 111), be granted in part and denied in part. It is recommended that Count VI be dismissed, on the stipulation of the parties, and that in all other respects, the motion be denied.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that counsel shall contact the undersigned magistrate judge within ten (10) days following Judge Gerrard's ruling on the motion to dismiss to set this case for trial.

Dated this 17th day of June, 2021.

BY THE COURT:
*s/ Cheryl R. Zwart*
United States Magistrate Jud