IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>FREDERICK ALAN VOIGHT,<br><br>　　　　　　Defendant. | 4:18-CR-3143<br><br>TENTATIVE FINDINGS |

　　　　The Court has received the revised presentence investigation report in this case. The defendant's sentencing statement (filing 252) objects to the presentence report and advocates for a below-guidelines sentence pursuant to the parties' Fed. R. Crim. P. 11(c)(1)(C) plea agreement.

　　　　IT IS ORDERED:

1.　　The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

　　　　(a)　　give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

　　　　(b)　　resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

(c)      impose upon the United States the burden of proof on all Guidelines enhancements;

(d)      impose upon the defendant the burden of proof on all Guidelines mitigators;

(e)      depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f)      in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.      The defendant has objected to the presentence report's sentencing guidelines calculation in two respects.

*Loss Calculation*

First, the defendant objects to determination of the losses attributable to the offense. It appears to be undisputed that the defendant's investors lost $40,903,052.09 on their investments. *See* filing 252 at 1. But, the defendant argues, the defendant actually invested $22,411,199.02 of that amount into his companies, like he promised his investors—so, the defendant says, that amount wasn't lost to *fraud*, and shouldn't be attributed to the offense. *See* filing 252 at 1-2.

But the defendant has construed his offense, and its relevant conduct, too narrowly. Pursuant to U.S.S.G. § 2B1.1(b)(1), the Court must increase the offense level based on the greater of the actual or intended loss—that is, pecuniary harm—resulting from the offense. *See id.*, cmt.

- 2 -

n.3(A). The Court need only make a reasonable estimate of the loss. *Id.*, cmt. n.3(C).

There is authority for the proposition that loss cannot include the value of services a defendant legitimately performed for the victims of his fraud. *United States v. Swanson,* 483 F.3d 509, 513 (7th Cir. 2007). But loss still includes the amounts the defendant placed at risk by misappropriating funds. *Id.* As the Second Circuit has explained,

> when an investor puts money into a fraudster's hands, and ultimately receives nothing of value in return, his loss is measured by the amount of principal invested, not by the principal amount plus the promised interest or return that was never received. The situation is different, however, in a case in which an investor is told not simply that his investment *will* grow, but that it *has grown,* and that the total of his original investment and the accrued interest or other gain is now available to be withdrawn or reinvested in the scheme, depending on the investor's preference. When an investor in a Ponzi scheme faces the choice either to withdraw or to reinvest, the choice to reinvest—an act frequently necessary to maintain the scheme itself— transforms promised interest into realized gain that can be used in the computation of loss for the purposes of federal sentencing.

*United States v. Hsu,* 669 F.3d 112, 121 (2d Cir. 2012) (citing *United States v. Alfonso,* 479 F.3d 570 (8th Cir. 2007); *United States v. Hartstein,* 500 F.3d 790, 800 (8th Cir. 2007)).

And in this case, the defendant's admitted conduct went well beyond promising to do one thing with invested funds, and instead doing another. Rather, the defendant has agreed that he

> represented to investors that he would search for companies that had an "excellent and innovative product in a growing market" but were short of cash needed to take their product to market. Defendant further represented that his business entities pooled investor funds and provided financing to companies in the form of secured loans with equity components in some transactions. Defendant knowingly failed to disclose certain material facts to lenders and potential lenders in correspondence and other materials that he knew the lenders and potential lenders would rely on in deciding whether to loan their monies to business entities owned by and/or affiliated with Defendant, and/or to renew or "rollover" existing loans instead of being repaid their principal. These material omissions, combined with other statements made to the lenders and potential lenders, led some lenders and potential lenders to believe that the full amount of money they lent to Defendant's entities would in turn be invested in specifically identified companies, referred to as "program companies."

Filing 247 at 2. And that's part and parcel of this sort of scheme, generally—the use of later-arriving investor funds to pay earlier investors perpetuates the fraud and ensnares new investors. *See Alfonso,* 479 F.3d at 572. Later investors were misled about the way in which their funds would be used—but the *use* to which the invested funds were

put was to mislead earlier investors about the security and profitability of their stakes. That is sufficient, the Court *tentatively* finds, to conclude that the funds they invested were also put and kept at risk by the defendant's fraudulent scheme, and represent the actual loss associated resulting from the defendant's offense and its relevant conduct. *See United States v. Balboa*, 622 F. App'x 31, 32 (2d Cir. 2015); *United States v. Stitsky*, 536 F. App'x 98, 111 (2d Cir. 2013); *United States v. Dachman*, 743 F.3d 254, 259 (7th Cir. 2014). Accordingly, the Court's tentative finding is that the presentence report's loss calculation is correct.

*Investment Advisor Enhancement*

The defendant objects to a four-level enhancement to the offense level pursuant to § 2B1.1(b)(20)(A)(iii), which applies when the offense involves "a violation of securities law and, at the time of the offense, the defendant was . . . an investment adviser. . . ." An "investment adviser" is someone "who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities. . . ." *Id.*, cmt. n.16(A) (citing 15 U.S.C. § 80b-2(a)(11)). The defendant argues that he was not an investment advisor regarding securities but, rather, was in venture capital—so, he says, he wasn't in the business of providing financial advice, nor was he compensated for it. Filing 252 at 2-4.

Again, the defendant is minimizing the conduct to which he admitted, which involved telling potential investors that "he would search for companies that had an 'excellent and innovative product in a growing market' but were short of cash" and pool investor funds to finance them

"in the form of secured loans with equity components in some transactions." Filing 247 at 2. In other words, the defendant represented to investors that he'd evaluated potential opportunities and would pursue those he found advisable, with secured loans and sometimes equity acquisition. That falls within the scope of advising about a "security," which broadly includes among other things:

> any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or based on the value thereof). . . .

§ 80b-2(a)(18). An investment advisor includes someone who advises their customers by exercising control over what investments are made with their clients' funds. *United States v. Elliott*, 62 F.3d 1304, 1310 (11th Cir. 1995); *see United States v. Onsa*, 523 F. App'x 63, 64 (2d Cir. 2013). And "compensation" need not involve a discrete fee earmarked as payment for advice—rather, it includes any economic benefit. *See United States v. Miller*, 833 F.3d 274, 282 (3d Cir. 2016); *United States v. Ogale*, 378 F. App'x 959, 961 (11th Cir. 2010). The defendant does not deny having been compensated by the companies supported by invested funds,

*see* filing 252 at 3, and in any event he took investor funds and turned them for his own purposes. *See Miller*, 833 F.3d at 282.

Accordingly, the Court's *tentative* finding is that the investment advisor enhancement applies. The Court also notes, however, that both of the defendant's objections to the guidelines calculation will be moot should the Court elect to accept the parties' Rule 11(c)(1)(C) plea agreement.

*Sentence and Supervised Release*

The defendant also urges the Court to accept the plea agreement—in effect, to vary downwards from the guidelines range—based on the defendant's personal circumstances, the circumstances of the offense, and the § 3553(a) factors.[1] *See* filing 252 at 4-8. The Court will resolve that issue at sentencing. The defendant also takes issue with two of the recommended "special" conditions of supervised release. *See* filing 252 at 8-11. The Court will also resolve those matters at sentencing, considering the relevant factors articulated in 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(b).

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

---

[1] The Court notes the defendant's reference to "oft-cited statistics that show low recidivism rates among defendants such as Mr. Voight, who are over 50, white, married, employed, college graduates, first-time offenders, convicted of fraud offenses, and do not use illicit drugs." Filing 252 at 7. The defendant's reference to his race as a basis for lenient sentencing is cringeworthy. So, to be clear: the defendant's race has *nothing* to do with any of the Court's decisions in this case.

4.  If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.  Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.  Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 28th day of November, 2022.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge